```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J & J SPORTS PRODUCTIONS, INC.,    :    CIVIL ACTION
                                   :    NO. 14-2456
          Plaintiff,               :
                                   :
     v.                            :
                                   :
CATHERINE AVILES, et al.,          :
                                   :
          Defendants.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 29, 2016

Presently before the Court are two motions for summary judgment filed by the parties. Plaintiff, J & J Sports Productions, Inc. ("Plaintiff") asserts in its motion that Defendants, Catherine and Edwin Aviles and the 258 E.C.E Corporation (collectively "Defendants"), unlawfully intercepted and exhibited without permission a boxing match on television to which Plaintiff had exclusive rights. Plaintiff contends that Defendants' actions violated, inter alia, 47 U.S.C. §§ 553 and 605, regarding the theft of cable services and the unauthorized use of communications (the "Cable Acts").[1] Defendants, in their

---

[1] Specifically, 47 U.S.C. § 553 prohibits a person from intercepting or receiving any communications service offered over a cable system, unless authorized to do so. 47 U.S.C. § 605, prohibits, inter alia, an unauthorized person from intercepting or receiving any radio communications (such as satellite cable programing) and publishing the content of those communications.

motion, dispute their responsibility for these alleged actions, claiming that they no longer owned or controlled the establishment that allegedly showed the boxing match.  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion.

I.   **FACTUAL BACKGROUND**[2] **AND PROCEDURAL HISTORY**

For the purpose of these motions, the parties do not dispute that on May 5, 2012, those in control of the restaurant "Latin Roots" at 256-258 E. Allegheny Avenue, Philadelphia, Pennsylvania exhibited without permission the boxing match "Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program" ("the Program").  The parties also do not dispute that Plaintiff had exclusive commercial distribution rights to the Program.

However, the parties do dispute whether Defendants owned or had control over Latin Roots at the time of the May 5, 2012 broadcast.  Defendants assert that, after negotiations beginning around October 2010, they sold the establishment at 256-258 E. Allegheny Avenue[3] (the "Establishment") (including the

---

[2]   Unless otherwise noted, the facts reported herein are those the parties do not dispute.  The Court views disputed facts in the light most favorable to Plaintiff as the nonmoving party.

[3]   At that point, the establishment was known as "Rebounds."

building, equipment, and liquor license) on December 9, 2011 to Ganel Lugo and CruzLugo, LLC.  Despite the copious evidence to the contrary, Plaintiff asserts that Defendants were still in control of the Establishment on May 5, 2012.

Defendants further contend that between March 1997 and March 1999, Mrs. Aviles purchased the properties located at 256 and 258 E. Allegheny Avenue in Philadelphia.  For many years she operated and managed the Establishment, then called 258 E.C.E. Corporation t/a "Rebounds," along with her husband, Edward Aviles, who was also listed as the president and treasurer of 258 E.C.E. Corporation.

CruzLugo, LLC was established on October 11, 2011 by Edward Cruz and Mr. Lugo.  It currently has a registered office of 256-258 E. Allegheny Avenue.  After purchasing the Establishment, Mr. Lugo contends that CruzLugo renamed it Latin Roots.  Defendants and Messrs. Cruz and Ganel assert that after the December 9, 2011 sale, Defendants had no relationship to, or control over, the Establishment.

On April 29, 2014, Plaintiff filed the complaint in this action asserting violations of the Cable Acts and conversion.  Mrs. Aviles contends that when she received notice of the complaint she contacted Plaintiff's counsel to explain that there had been a mistake regarding the ownership of the Establishment.  When Plaintiff maintained the suit despite this

3

information, Defendants filed their motion for summary judgment on May 22, 2015, asserting that they did not own the Establishment on May 5, 2012.  Plaintiff filed its motion for summary judgment on May 27, 2015 arguing that Defendants' acts at Latin Roots on May 5, 2012 violated the Cable Acts.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the

nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal quotation marks omitted).

The standard for summary judgment is identical when addressing cross-motions for summary judgment. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

**III. DISCUSSION**

For the purposes of these motions, it is not necessary to delve into the requirements of the Cable Acts. Instead, to rule on both motions, the Court must discern only whether the evidence shows that there is a genuine dispute as to any material fact regarding whether Defendants did or did not own or

5

control Latin Roots on May 5, 2012.[4]  Regarding Defendants' motion, the Court concludes that there is no genuine dispute as to any material fact concerning Defendants' assertion that they did not control Latin Roots on May 5, 2012.  Thus, the Court will grant Defendants' motion.  Conversely, in light of the evidence establishing Defendants' lack of ownership and control over Latin Roots on May 5, 2012, the Court finds that Plaintiff is not entitled to judgment as a matter of law.  Thus, the Court will deny Plaintiff's motion.

As detailed below, the evidence shows that on December 9, 2011, Defendants sold the Establishment to CruzLugo.  While there is some evidence which could suggest that the liquor license was not properly transferred from Mrs. Aviles to CruzLugo until late 2012, the issue raised does not create a genuine dispute as to any material fact.  Anderson, 477 U.S. at 248.

   A.   Evidence that Defendants Sold the Establishment on December 9, 2011

The primary uncontroverted evidence establishing that Defendants relinquished ownership and control of the Establishment to CruzLugo on December 9, 2011 is the publicly

---

[4] Plaintiff does not suggest that Defendants could be liable absent ownership of or control over the Establishment at the time the Program was shown.

recorded and notarized deed showing that on December 9, 2011 Mrs. Aviles sold the property to CruzLugo for $450,000.  (ECF No. 25, Exh. K).  Several other documents support this record including a publicly recorded Philadelphia Transfer Tax Certification dated December 9, 2011 showing the transfer of the property from Mrs. Aviles to CruzLugo in exchange for $450,000.  (ECF No. 25, Exh. P).  Similarly, the summary judgment record also includes the Settlement Statement for 256 and 258 E. Allegheny Avenue signed and dated December 9, 2011.  (ECF No. 25, Exh. D).  This document lists, inter alia, the place and date of settlement, Mrs. Aviles as the seller, CruzLugo as the borrower/purchaser, and the purchase price of $450,000.  (Id.).

Defendants, as well as Messrs. Cruz and Lugo, also submitted signed affidavits supporting this view.  Each of these affidavits provides, inter alia, that:  Defendants and CruzLugo agreed to the sale of the Establishment in October 2010; settlement for the property, equipment, and liquor license occurred on December 9, 2011; CruzLugo changed the name of the Establishment to Latin Roots; and that CruzLugo, and not Defendants, had full ownership and control of the Establishment as of December 9, 2011.  (ECF No. 25, Exhs. B, E, F, and J).

Moreover, Defendants provided additional documents that, do not alone establish the sale of the Establishment and relinquishment of control, but do support the version of events

painted by the evidence discussed above.  First, Defendants have submitted the Certificate of Organization for CruzLugo, LLC recorded with the Pennsylvania Department of State Corporate Bureau.  (ECF No. 25, Exh. G).  This record, dated October 1, 2011, lists CruzLugo's registered address as 256-258 E. Allegheny Avenue and its organizers as Messrs. Cruz and Lugo.  (Id.).  Second, and similarly, Defendants provided a print-out from the Pennsylvania Department of State's website dated January 18, 2015 entitled "Business Entity Filing History," which provides that CruzLugo, LLC was created in October 2011 and has its registered office at 256-258 E. Allegheny Avenue.  (Id.).  Third, Defendants attached to their motion an October 5, 2011 letter from the IRS assigning CruzLugo an employer identification number sent to CruzLugo and Mr. Cruz at 256-258 E. Allegheny Avenue.  (ECF No. 25, Exh. H).  Fourth, Defendants submitted an October 22, 2011 "Evidence of Property Insurance" form showing that Total Risk Management, Inc. insured CruzLugo for the 256-258 E. Allegheny Avenue property.  (ECF No. 25, Exh. I).

Finally, Defendants provide the signed sales agreement between Mrs. Aviles and Mr. Lugo for 256 and 258 E. Allegheny Avenue dated December 9, 2011.  (ECF No. 25, Exh. C).  The sales agreement provides that the Establishment's "Liquor License, Stock, Equipment, Real Estate, Goodwill" were included in the

8

sale. (Id. at 3).  Plaintiff objects to this document, claiming that Defendants did not lay a proper foundation for it and that it is hearsay.[5]  Defendants did not respond to these assertions.  Even assuming that the sales agreement would be considered hearsay in this context, the document is not necessary to the Court's determination given the overwhelming nature of the other evidence establishing that Defendants are entitled to judgment as a matter of law.

### B.  Evidence that Defendants Retained Ownership or Control of the Establishment on May 5, 2012

Plaintiff's main evidence that it contends shows Defendants had ownership or control over the Establishment on May 5, 2012 is a "Certificate of Completion" (the "Certificate") to the Pennsylvania Liquor Control Board ("LCB") certifying that the parties performed their obligations to transfer the liquor license for the Establishment from Defendants to Cruzlugo on September 21, 2012--over four months after the Program was broadcast at Latin Roots.  (ECF No. 25, Exh. O).  Facially, this evidence merely establishes that the transfer of the liquor license from Mrs. Aviles to CruzLugo may not have been effected in a timely manner, which may have ramifications to the LCB, but has no effect on the issue before the Court.  Plaintiff does not

---

[5] Plaintiff did not object to any other evidence on these grounds.

seriously contend that the fact that the liquor license was not timely transferred shows Defendants controlled the Establishment on May 5, 2012. Instead, several discrepancies and irregularities on the Certificate form the heart of Plaintiff's argument.

The Certificate provides that the "undersigned" certify that: (1) the financial arrangements regarding the transfer of the liquor license were "entirely consummated without change on the date and at the time indicated below"; and (2) "as of the date and time this Certification was signed, the licensee indicated above has legal possession of OR legally occupies the premises set forth herein." (Id.). At the bottom of the Certificate are signature lines for the licensee and the former licensee. The licensee is listed at the top of the Certificate as CruzLugo LLC with a license number of R-11230. (Id.).

The first irregularity on the Certificate, besides the date of completion, is that only 258 ECE Corporation and Mrs. Aviles are listed as the "undersigned." (Id.). Pursuant to 40 Pa. Code § 3.8, both the former licensee and the new licensee must sign the Certificate. Thus, CruzLugo or one of its organizers should also be listed as an undersigned. This requirement is echoed by the two signature lines at the bottom of the form for the licensee and former licensee.

The second irregularity is related to the first. Mrs. Aviles signed on the line for the licensee while either Mr. Cruz or Mr. Aviles signed on the line for the former licensee (after comparing the signature to that of Mr. Aviles and Mr. Cruz on their affidavits, it is unclear to the Court who signed the Certificate). In either case, it is apparent that the parties made a mistake as the liquor license was not being transferred from Mr. Cruz or Mr. Aviles to Mrs. Aviles.

Plaintiff strings these discrepancies together to argue that Defendants had control over the Establishment on May 5, 2012. Specifically, it asserts that since Mrs. Aviles signed on the line for the licensee and certified by signing that "at the date and time this Certification was signed, the <u>licensee indicated above</u> has legal possession of OR legally occupies the premises," (<u>Id.</u>) (emphasis added), then she certified that <u>she</u> was the licensee and possessed or occupied the premises on September 21, 2012, the date listed on the form.

Plaintiff's theory is flawed. Contrary to its suggestion, the "licensee indicated above" is clearly CruzLugo, as noted at the top of the Certificate. This fact is buttressed by additional documents submitted by Plaintiff with its motion for summary judgment. For example, Plaintiff submitted two August 27, 2012 letters from the LCB to CruzLugo explaining that the transfer of the liquor license from 258 E.C.E. Corporation

11

to CruzLugo had been approved.  (ECF No. 35-2, p. 17-19).  Similarly, Plaintiff submitted the LCB license for CruzLugo establishing that it was the licensee for license R-11230 as of August 27, 2012.  (<u>Id.</u> at 11).  Therefore, Plaintiff's argument that some entity other than CruzLugo was the proposed licensee in late 2012 when the Certificate was submitted to the LCB is totally without merit.

It is clear that the LCB Certificate of Completion was improperly completed and untimely submitted.  It is equally clear that Mrs. Aviles did not intend to certify that she had control over the Establishment on September 21, 2012.  Given the clearly flawed nature of the Certificate, its reliability for any purpose is deeply suspect.  Given these facts as well as the amount of reliable evidence supporting Defendants' arguments, the Certificate does not generate a genuine dispute as to any material fact regarding whether Defendants controlled Latin Roots on May 5, 2012.[6]

---

[6]  It is unclear why the Certificate is dated September 21, 2012, especially since the LBC had already approved the license transfer one month prior.  Mrs. Aviles, as well as Messrs. Cruz and Lugo, asserted in their affidavits that all the paperwork related to the sale was completed and signed on December 9, 2011.  (ECF No. 25, Exhs. B, E, and F).  Similarly, Messrs. Cruz and Lugo asserted that they began submitting the license transfer paperwork to the LCB in October 2011.  (ECF No. 25, Exhs. E and F).  However, Mrs. Aviles admitted that while she signed all of the documents on December 9, 2011, she did not date them all.  (ECF No. 25, Exh. B).  The discrepancies on the Certificate may be partially explained by the fact that

While Plaintiff does not rely heavily upon it, Plaintiff also submits a print-out from the Pennsylvania Department of State's website dated May 27, 2015 entitled "Business Entity Filing History," similar to the one discussed above for CruzLugo.  (ECF No. 35-2).  However, this print-out lists 258 E.C.E. Corporation, rather than CruzLugo, as having its registered office at 258 E. Allegheny Avenue.  (Id. at 5).  This print-out directly conflicts with Defendant's print-out from the same source indicating that CruzLugo's registered office is located at that address.  (ECF No. 25, Exh. G).

The print-out showing Defendants' current address as 258 E. Allegheny Avenue does raise a dispute regarding a material fact (i.e. whether Defendants controlled the Establishment on May 5, 2012).  However, that dispute is not genuine in that, given the notarized publicly filed evidence establishing that Defendants sold the 256-258 E. Allegheny Avenue properties on December 9, 2011, no "reasonable jury could return a verdict for" Plaintiff on the basis of the Internet print-out.  Anderson, 477 U.S. at 248 (providing that dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); Am. Eagle

---

Defendants were not represented by counsel at the closing, (id.), but again this mystery is not of serious concern regarding the Court's analysis of whether Defendants had control over the Establishment on May 5, 2012.

Outfitters, 584 F.3d at 581 (providing that "[a] motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact" (quoting Anderson, 477 U.S. at 247)).

The evidence set forth above reveals that Defendants sold the Establishment to CruzLugo on December 9, 2011. There is no genuine dispute as to any material fact that Defendants did not maintain any control over the Establishment on May 5, 2012. The evidence cited by Plaintiff in support of its arguments amounts to a mere scintilla, and Plaintiff's main argument is based on a clear misreading of that evidence. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (providing that "'[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]'" (alterations original) (quoting Anderson, 477 U.S. at 252)).

As a result, regarding Defendant's motion, the Court finds that there is no genuine issue of material fact concerning their position that they did not control Latin Roots on May 5, 2012. Thus, Defendants' motion for summary judgment must be granted. Given that there is no genuine dispute as to any material fact that Defendants did not control Latin Roots on May

5, 2012, Plaintiff has not shown that it is entitled to judgment as a matter of law, and its motion must be denied.

   C. <u>Sanctions under Federal Rule of Civil Procedure 11</u>

   Defendants also assert in their summary judgment motion that, due to Plaintiff's frivolous pursuit of this suit in the face of Mrs. Aviles' timely explanation and the publicly available evidence establishing that Defendants were not the owners of the Establishment, Plaintiff should be sanctioned under Rule 11 and Defendants awarded counsel fees and costs.  As recognized by Plaintiff, Defendants were required to bring this claim in a separate motion pursuant to Fed. R. Civ. P. 11(c)(2). However, the Court is disinclined to grant such relief in any event.

   Rule 11 requires counsel to refrain from filing "pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." <u>Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers</u>, 855 F.2d 1080, 1091 (3d Cir. 1988) (internal citations omitted).  The standard for testing counsel's conduct "is reasonableness under the circumstances." <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 482 (3d Cir. 1987).

   In this case, evidence such as the May 27, 2015 "Business Entity Filing History" website print-out listing 258 E.C.E. Corporation's registered office as 256-258 E. Allegheny

15

Avenue could lead one to believe that Defendants controlled the activities occurring at Latin Roots on May 5, 2012.  Thus, the Court concludes that Plaintiff's actions were not so frivolous as to trigger Rule 11, even though the evidence it relied upon ultimately did not create genuine dispute as to a material fact.

**IV.  CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment, entering judgment in their favor, and against Plaintiff, and will deny Plaintiff's motion.  The Court will further deny Defendants' request for Rule 11 sanctions.

An appropriate order follows.